**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| BROWSERKEY, LLC, | § | Case No. |
|  | § |  |
| Plaintiff, | § | **JURY TRIAL DEMANDED** |
|  | § |  |
| v. | § |  |
|  | § |  |
| REGIONS BANK, | § |  |
|  | § |  |
| Defendant. | § |  |
|  | § |  |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff BrowserKey, LLC ("BrowserKey" or "Plaintiff") for its Complaint against Regions Bank ("Regions" or "Defendant") alleges as follows:

**THE PARTIES**

1.     BrowserKey is incorporated under the laws of the State of Texas, with a place of business located at 101 East Park Boulevard, Suite 600, Plano, Texas 75074.

2.     Upon information and belief, Defendant Regions is a corporation organized and existing under the laws of the State of Alabama, with a place of business at 1900 Fifth Avenue North, Birmingham, Alabama 35203 and with additional regular and established places of business in this District at least at: 722 West Marshall Avenue, Longview, Texas 75601 and 910 East Hawkins Parkway, Longview, Texas 75605. Upon information and belief, Defendant may be served with process via its registered agent, Corporation Service Company Inc., at 641 South Lawrence Street, Montgomery, Alabama 36104.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

4.      This Court has specific and personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Upon information and belief, Defendant has sufficient minimum contacts with the forum because Defendant has physical locations and transacts substantial business in the State of Texas and in this Judicial District. Further, Defendant has, directly or through subsidiaries or intermediaries, committed acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint, as alleged more particularly below.

5.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(b). Defendant is registered to do business in Texas and, upon information and belief, Defendant has transacted business in this Judicial District, has committed acts of direct and indirect infringement in this Judicial District, and has regular and established places of business in this Judicial District as set forth above. Defendant is subject to personal jurisdiction in this Judicial District and has committed acts of patent infringement in this Judicial District. On information and belief, Defendant through its own acts and/or through the acts of others, makes, uses, sells, offers to sell, and/or imports infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District, such that this venue is a fair and reasonable one.

### U.S. PATENT NO. 7,249,262

6.      On July 24, 2007, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,249,262 (the "'262 Patent," or "Patent-in-Suit") entitled "Method For Restricting Access To A Web Site By Remote Users." A true and correct copy of the '262 Patent is attached hereto as Exhibit A.

7.      BrowserKey is the sole and exclusive owner of all right, title, and interest to and in the '262 Patent, and holds the exclusive right to take all actions necessary to enforce its rights to the '262 Patent, including the filing of this patent infringement lawsuit. BrowserKey also has the right to recover all damages for infringement of the '262 Patent as appropriate under the law.

---

[1] https://www.regions.com/locator?type=branch&r=2245693&geoLocation=Marshall%2C+Texas

## INFRINGEMENT ALLEGATIONS

8.      The '262 Patent generally covers a method of restricting access to data maintained on a server computer by one or more authorized, networked client machines. The technology was developed by Leon E. Hauck and Brent J. Burval. This technique is incorporated into web and mobile applications made by numerous banking institutions, including Regions.

9.      Regions has manufactured, used, marketed, distributed, sold, offered for sale, exported from, and imported into the United States, products that infringe the '262 Patent. These Accused Products include at least all versions and variants of the Regions Web and Mobile Applications since 2019. The Accused Products include at least all versions and variants of the Regions Mobile Banking Applications which have supported any biometric, token-based, and/or passwordless authentication. For example, the Accused Products comprise at least the Regions Bank app (a.k.a., Regions Mobile App), Regions iTreasurey Mobile Application, Regions Real Pass, and Regions Quick Deposit Mobile for iOS, iPadOS, and Android, including all supporting servers, computer systems, and infrastructures, since at least 2019.

10.     BrowserKey has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the '262 Patent.

11.     Upon information and belief, Regions has had knowledge and notice of the Patent-in-Suit, and its infringement thereof, since they were issued. Regions, as a bank, regularly monitors ways to secure its mobile and web applications, and upon information and belief, monitored or was otherwise aware of Plaintiff's patented inventions, including due to their impact on Regions and Regions's competitor's security systems. Alternatively, to the extent that Regions avoided actual knowledge of the Patent-in-Suit, and its infringement thereof, it was willfully blind. Upon information and belief, to the extent it lacked actual knowledge of infringement, Regions

deliberately avoided learning of infringement, despite subjectively believing that there was a high probability that it infringed Plaintiff's patents, and specifically the Patent-in-Suit. Upon information and belief, Regions has adopted a policy or practice of not reviewing the patents of others, including those related to Regions's specific industry and of Plaintiff in particular, thereby remaining willfully blind to the Patent-in-Suit. Upon information and belief, Regions lacks written policies disseminated to employees regarding monitoring or avoidance of patent infringement by Regions and lacks mechanisms for employees to report patents which they believe Regions may infringe. Upon information and belief, Regions and its employees understood that there was a high likelihood that patents filed on innovations by Plaintiff read on the Accused Products.

## COUNT I
### (Infringement of the '262 Patent)

12.    Paragraphs 1 through 11 are incorporated by reference as if fully set forth herein.

13.    BrowserKey has not licensed or otherwise authorized Regions to make, use, offer for sale, sell, or import any products that embody the inventions of the '262 Patent.

14.    Regions has and continues to directly infringe the '262 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '262 Patent. These products include at least all versions and variants of the Regions Web and Mobile Applications.

15.    For example, Regions directly infringes at least claim 1 of the '262 Patent by making, using, offering to sell, selling, and/or importing into the United States products that practice a method of restricting access to data maintained on a server computer by an authorized client machine, said method comprising the steps of: a. installing a client-side software program on the client machine for generating a client machine-specific identifier, the client machine-

specific identifier being substantially unique to the particular machine upon which such client-side software program is initially installed; b. operating the client-side software program on the client machine to generate the client machine-specific identifier; c. generating a password remote from the client machine and providing the password to a user of the client machine, the password being derived from the client machine-specific identifier generated in step b., and uniquely corresponding thereto; d. issuing a request by the client machine to the server computer for access to data maintained on the server computer; e. responding to the request for access of step d. by having the client machine re-generate its machine-specific identifier; f. verifying on the client machine whether the client machine-specific identifier re-generated in step e. uniquely corresponds with the password generated in step c.; and g. recognizing the client machine as being authorized to access data maintained on the server computer if the verification performed by step f. is true, and refusing to recognize the client machine as being authorized to access data maintained on the server computer if the verification performed by step f. is false.

16.     The Accused Products practice a method of restricting access to data maintained on a server computer by an authorized client machine. For example, upon information and belief, on client machines running the Regions Mobile Application variant for Apple iOS, one method by which an operator may sign in to access Regions's "protected URLs," as a Regions account holder, is via Apple's Touch and Face ID (locally compared "biometrics"). This biometric process authorizes the client machine to access restricted data on Regions' server(s).

FAQ

# How do I set up or enable biometrics for my app login?

To enable biometric ID, toggle the button to green on the login screen. You can also set up biometric verification by going to **Settings** in the Regions Mobile app and selecting **Biometric ID**.

Certain devices are eligible for enrollment in Touch ID/Fingerprint or Face ID/facial recognition login. If eligible, you will have the option to enroll by following the prompts within Regions Mobile app. If you store multiple biometric IDs on your device, including those of additional persons, those persons will also be able to access your Regions Mobile app, including the services within the app.

[2]

---

[2] https://www.regions.com/help/online-banking-help/login-and-security/biometrics/how-do-i-set-up-or-enable-biometrics-for-my-app-login



17.    The Accused Products practice a method of installing a client-side software program on the client machine for generating a client machine-specific identifier, the client

---

[3] Screen shot of the Regions Mobile Application

machine-specific identifier being substantially unique to the particular machine upon which such client-side software program is initially installed. For example, a client-side software program (e.g., the Regions Mobile Application) is installed on the client machine (e.g., a phone running Regions Mobile Application), and generates a client machine specific identifier (e.g., a device key, certificate, public/private key pair, and/or other cryptographic material). Upon information and belief, each such identifier is unique to the client machine upon which such client-side software program is initially installed (e.g., to an instance of Regions Mobile Application running on a specific client machine).

18.     The Accused Products further practice a method of operating the client-side software program on the client machine to generate the client machine-specific identifier. For example, upon launch of the Regions Application, the Regions servers verify that a client application adapted to calculate a machine specific identifier with a machine specific key (e.g., a Regions Application configured to calculate a signature, device key, certificate, public/private key pair, and/or other cryptographic material based on cryptographic and/or seed material of a machine-specific identifier provided to the client by the server within a policy or registration request) exists on the client device (e.g., is installed), or provides that client application to the device (e.g., by triggering an update or transmission to the Regions Application).

19.     The Accused Products further practice a method of generating a password remote from the client machine and providing the password to a user of the client machine, the password being derived from the client machine-specific identifier generated in step b, and uniquely corresponding thereto. For example, upon information and belief, the Regions servers generate a password (e.g., a nonce, token, cryptographic key, certificate, cryptogram, signed nonce, and/or other cryptographic material) derived from a client machine-specific identifier generated on the

client machine (e.g., by applying a signature or transform based on a seed value to a private key and/or device keys associated with, and/or generated based on material from, the secure element of the device). The Regions servers then provide that password to the client machine (e.g., by transmitting the password to a smartphone running the Regions Application via HTTP protocol). For example, upon information and belief, that password, is either stored inside, or wrapped in encryption provided by, a secure element/secure enclave/secure execution environment of the mobile device running the Regions Application. Upon information and belief, the seed value, signature, and/or algorithm are also stored inside or wrapped in encryption provided by that secure element/secure enclave/secure execution environment.

20.    The Accused Products further practice a method of issuing a request by the client machine to the server computer for access to data maintained on the server computer. For example, Regions servers receive a request (e.g., an HTTP request) from a client machine (e.g., a smartphone running the Regions Mobile Application) for access to data stored on a server (e.g., account information stored on a server) when the application is launched. For example, when first launching the Regions Mobile Application, upon information and belief, a user agent requests a protected URL associated with Regions.

21.    The Accused Products further practice a method of responding to the request for access of step d. by having the client machine re-generate its machine-specific identifier and verifying on the client machine whether the client machine-specific identifier re-generated in step e. uniquely corresponds with the password generated in step c. For example, upon information and belief, when biometric authentication is enabled on the Regions Mobile Application, the Regions servers transmit instructions to re-generate the password (e.g., the seed value and algorithm that can be applied to the nonce, token, device key, public key, and/or key pair to generate a matching

password and/or signed nonce), and to verify, on the client machine, whether the client machine-specific identifier uniquely corresponds with the password generated at step b (e.g., by utilizing fingerprint, face, or iris recognition to authenticate a user, thereby granting access to the secure element-protected password, and applying same to the seed value and algorithm to the public key, nonce, signature, and/or key pair to verify that it matches the one transmitted by the server). For example, upon information and belief, when the client machine supports Apple Touch / Face ID, and the Regions Mobile Application has been provisioned to sign in to Regions online services via Touch / Face ID, Regions computer code automatically prompts the operator to sign in via Touch / Face ID immediately after the app is launched.

22.    The Accused Products further practice a method of recognizing the client machine as being authorized to access data maintained on the server computer if the verification performed by step f. is true, and refusing to recognize the client machine as being authorized to access data maintained on the server computer if the verification performed by step f. is false. For example, if the sign in on the client machine is successful, access to data maintained on Regions server(s) is authorized by Regions. If the client machine is not signed in, access to data maintained on Regions server(s) is denied by Regions.

23.    For example, Regions directly infringes at least claim 11 of the '262 Patent by making, using, offering to sell, selling, and/or importing into the United States products that practice a method of restricting access to data maintained on a server computer by an authorized client machine, said method comprising the steps of: a. creating a session identifier in a computer remote from the client machine for a current browsing session of the client machine; b. transmitting to the client machine the session identifier created in step a.; c. storing the session identifier transmitted in step b. within the client machine; d. verifying, on the client machine, that the client

machine is authorized to access data maintained on the server computer; e. obtaining the session identifier stored in step c., and storing such session identifier within a storage table remote from the client machine if such client machine was verified in step d.; f. transmitting a request by the client machine for access to data maintained on the server computer, such request including the session identifier stored in step c.; g. comparing the session identifier transmitted in step f. with the session identifier stored in the storage table during step e. to determine whether the request for access transmitted in step f. is authorized; and h. permitting access by the client machine to the requested data maintained on the server computer if the comparison made in step g. shows that the request for access is authorized, and denying access by the client machine to the requested data maintained on the server computer if the comparison made in step g. shows that the request for access is not authorized.

24.     The Accused Products practice a method of restricting access to data maintained on a server computer by an authorized client machine. For example, upon information and belief, on client machines running the Regions Mobile Application variant for Apple iOS, one method by which an operator may sign in to access Regions "protected URLs," as a Regions Account holder, is via Apple's Touch and Face ID (locally compared "biometrics").

FAQ

# How do I set up or enable biometrics for my app login?

To enable biometric ID, toggle the button to green on the login screen. You can also set up biometric verification by going to **Settings** in the Regions Mobile app and selecting **Biometric ID**.

Certain devices are eligible for enrollment in Touch ID/Fingerprint or Face ID/facial recognition login. If eligible, you will have the option to enroll by following the prompts within Regions Mobile app. If you store multiple biometric IDs on your device, including those of additional persons, those persons will also be able to access your Regions Mobile app, including the services within the app.

[4]

---

[4]     https://www.regions.com/help/online-banking-help/login-and-security/biometrics/how-do-i-set-up-or-enable-biometrics-for-my-app-login



25.    The Accused Products further practice a method creating a session identifier in a computer remote from the client machine for a current browsing session of the client machine. For

---

[5] Screen shot of the Regions Mobile Application

example, upon information and belief, Regions server computer(s) create one or more session identifiers, remote from the client machine, when a new user agent session on the client machine initially requests, via the HTTP protocol, a Regions "protected URL." For example, upon information and belief, a Regions server creates a session identifier (e.g., a static or dynamic session ID, token, and/or certificate) upon successful access by a client device running the Regions Mobile Application. Further, upon information and belief, when first launching the Regions Mobile Application, a user agent requests Regions URLs. In response to the request, one or more name-value pair(s) are created by the Regions server(s).

26.     The Accused Products further practice a method of transmitting to the client machine the session identifier created in step a. Upon information and belief, Regions transmits the session identifier(s) to the client machine via the Internet. Session identifier(s) are transmitted by the Regions HTTP server computer(s) to the client machine via one or more HTTP response headers and/or HTTP response bodies. For example, upon information and belief, a Regions server transmits the session identifier (e.g., a static or dynamic session ID, token, and/or certificate) to a client machine (e.g., a phone running the Regions Mobile App) upon initiating of the log-in process. Upon information and belief, this session identifier is stored in secure memory associated with the Regions Mobile App, and used to identify the session by a client device (e.g., phone running the Regions Mobile App) in subsequent communications and request/response processes with the Regions server for the duration of a browsing session. Upon information and belief, each such communication includes at least one name-value pair, comprising of at least one session identifier.

27.     The Accused Products further practice a method of storing the session identifier transmitted in step b. within the client machine. Upon information and belief, per instructions from

Regions servers and/or Regions computer code, the web browser stores the session identifier(s) on the client machine. Upon information and belief, such instructions are transmitted in the form of code, automatically executed by the Regions App, and/or by a browser operated based on computer instructions by the Regions App. For example, upon information and belief, the Regions Mobile App further stores the identifier in a client device (e.g., a phone), in secure memory associated with the application.

- Through or from your device or browser or cookies that have been placed on your browser. Certain information is collected by most browsers, such as your Media Access Control (MAC) address, computer type (Windows or Macintosh), screen resolution, operating system version and internet browser type and version. We use this information to ensure that the Sites function properly and to maintain security.

[6]

28.     The Accused Products further practice a method of verifying, on the client machine, that the client machine is authorized to access data maintained on the server computer. Upon information and belief, when the client machine supports Apple Touch / Face ID, and the Regions Mobile Application has been provisioned to sign in to Regions online services via Touch / Face ID, Regions computer code automatically prompts the operator to sign in via Touch / Face ID immediately after the application is launched. For example, upon information and belief, the Regions Mobile Application verifies that a user is authorized to access data maintained on a Regions server by locally authenticating and/or validating that its Session ID shows a user is logged in. For example, the Regions Mobile App locally verifies that it is authorized to access data maintained on the Regions servers by authenticating an operator's biometric information.

---

[6] https://www.regions.com/about-regions/privacy-security/online-privacy-notice

FAQ

## How do I set up or enable biometrics for my app login?

To enable biometric ID, toggle the button to green on the login screen. You can also set up biometric verification by going to **Settings** in the Regions Mobile app and selecting **Biometric ID**.

Certain devices are eligible for enrollment in Touch ID/Fingerprint or Face ID/facial recognition login. If eligible, you will have the option to enroll by following the prompts within Regions Mobile app. If you store multiple biometric IDs on your device, including those of additional persons, those persons will also be able to access your Regions Mobile app, including the services within the app.

[7]

---

[7]    https://www.regions.com/help/online-banking-help/login-and-security/biometrics/how-do-i-set-up-or-enable-biometrics-for-my-app-login



29.     The Accused Products further practice a method of obtaining the session identifier

stored in step c., and storing such session identifier within a storage table remote from the client

---

[8] Screen shot of the Regions Mobile Application

machine if such client machine was verified in step d. Upon information and belief, the Regions Web Application is an extension or related to a remote Regions storage table storing session identifier(s). For example, upon information and belief, once an operator has logged into the Regions Mobile App using biometric authentication, the Regions server system obtains the session identifier from the Regions Mobile App client, e.g., through a request/response in which the client confirms local verification of biometric information. Upon information and belief, the Regions server then stores the session identifier in a table within secure memory associated with the server, where it is used to address transmission of data to the client.

30.    The Accused Products further practice a method of transmitting a request by the client machine for access to data maintained on the server computer, such request including the session identifier stored in step c. Upon information and belief, per instructions from Regions servers and/or Regions computer code, upon successful sign in, the user agent is automatically redirected to the default Regions Mobile Application page (a Regions "Protected URL") which invokes one or more HTTP requests. The HTTP request(s) are transmitted by the client machine and such request(s) include session identifier(s) to overcome limitations of the stateless HTTP protocol. For example, upon information and belief, the Regions Mobile App running on a client machine (e.g., a phone) transmits requests for access to data maintained on the server computer (e.g., to Regions brokerage and/or bank account data maintained on the Regions server system). Upon information and belief, all request/response communications once the log-in process is initiated, including for such account data, include the session identifier.

31.    The Accused Products further practice a method of comparing the session identifier transmitted in step f. with the session identifier stored in the storage table during step e. to determine whether the request for access transmitted in step f. is authorized. Upon information and

belief, Regions compares session identifier(s) remotely. For example, when session cookies (which store session identifier(s)) are deleted from the client machine, the client machine is no longer logged in and no longer able to access Regions "Protected URLs." Furthermore, Regions indicates that if you choose to reject cookies, you will receive reduced functionality of the Regions Mobile Banking App or website. Upon information and belief, the Regions servers further compare the session identifier transmitted by a Regions Mobile App with the corresponding identifier stored in a storage table to determine whether the request for access (e.g., to a brokerage and/or bank account) is authorized (e.g., whether the user logged in based on biometric information presented to the Regions Mobile App).

> giving you the opportunity to decide whether or not to accept it. If you choose not to accept cookies, you may experience some reduction in functionality depending on which Site you are using. You also may need to [9]

32.    The Accused Products further practice a method of permitting access by the client machine to the requested data maintained on the server computer if the comparison made in step g. shows that the request for access is authorized, and denying access by the client machine to the requested data maintained on the server computer if the comparison made in step g. shows that the request for access is not authorized. Upon information and belief, if the client machine is signed in, access to data maintained on Regions server(s) is authorized by Regions. If the client machine is not signed in, access to data maintained on Regions server(s) is denied by Regions. For example, upon information and belief, the Regions servers permit access by a client machine to the requested data maintained on the server computer (e.g., access to a brokerage and/or bank account by the Regions Mobile App) if the comparison made in step g. shows that the request for access is

---

[9] https://www.regions.com/about-regions/privacy-security/online-privacy-notice

authorized (e.g., that the user has logged in based on authentication of biometric information), or deny access (e.g., fail to return access to requested brokerage and/or bank account information) if the comparison shows that the request is not authorized (e.g., a user's log-in was not successful).

33.     For example, Regions directly infringes at least claim 14 of the '262 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a computer program product tangibly embodied in an information carrier, the computer program product including instructions that, when executed, perform operations for restricting access to data maintained on a server computer, the method comprising: a. receiving a request from a client machine for access to data stored on a server; b. generating a password remote from the client machine, and providing the password to the client machine or to a user of the client machine, the password being derived from, and corresponding to, a client machine-specific identifier generated on the client machine; c. transmitting to the client machine instructions to re-generate the password and to verify, on the client machine, whether the client machine-specific identifier uniquely corresponds with the password generated at step b.; and d. allowing access to the data if the verification performed by step c. is true, and denying access to the data if the verification performed by step c. is false.

34.     Each Accused Product comprises a computer program product tangibly embodied in an information carrier, the computer program product including instructions that, when executed, perform operations for restricting access to data maintained on a server computer, the method comprising the functionality of claim 14. For example, Regions servers supporting the Regions Mobile Application include a computer program product tangibly embodied in an information carrier (e.g., a software program running in memory) including instructions which, when executed, perform operations for restricting access to a user's account information via the

Regions Mobile Application as recited below, e.g., by allowing access via biometric authentication.

35.    Each Accused Product comprises a computer program product tangibly embodied in an information carrier, the computer program product including instructions that, when executed, performs receiving a request from a client machine for access to data stored on a server. For example, Regions servers receive a request (e.g., an HTTP request) from a client machine (e.g., a smartphone running the Regions Mobile Application) for access to data stored on a server (e.g., account information stored on a server) when the application is launched. For example, when first launching the Regions Mobile App, upon information and belief, a user agent requests a protected URL associated with Regions. Such requests are received by Regions servers responsible for restricting access to account data. Upon information and belief, each such communication includes at least a name-value pair.

36.    Each Accused Product comprises a computer program product tangibly embodied in an information carrier, the computer program product including instructions that, when executed, performs generating a password remote from the client machine, and providing the password to the client machine or to a user of the client machine, the password being derived from, and corresponding to, a client machine-specific identifier generated on the client machine. For example, the Regions servers generate a password (e.g., a nonce, cryptographic key, public key, certificate, cryptogram, token, and/or other cryptographic material) derived from a client machine-specific identifier generated on the client machine (e.g., by applying a transform based on a seed value to a private key and/or device keys associated with or protected by the secure element of the device). The Regions servers then provide that password to the client machine (e.g., by transmitting the password to a smartphone running the Regions Mobile Application via HTTP

protocol). Upon information and belief, that password, is either stored inside, or wrapped in encryption provided by, a secure element/secure enclave of the mobile device running the Regions Mobile Application. The seed value and algorithm are also stored inside or wrapped in encryption provided by that secure element/secure enclave.

37.     Each Accused Product comprises a computer program product tangibly embodied in an information carrier, the computer program product including instructions that, when executed, performs transmitting to the client machine instructions to re-generate the password and to verify, on the client machine, whether the client machine-specific identifier uniquely corresponds with the password generated at step b. For example, upon information and belief, when biometric authentication is enabled on the Regions Mobile App, the Regions servers transmit instructions to re-generate the password (e.g., the seed value and algorithm that can be applied to the nonce, token, device key, public key, and/or key pair to generate a matching password and/or signed nonce), and to verify, on the client machine, whether the client machine-specific identifier uniquely corresponds with the password generated at step b. (e.g., by utilizing fingerprint, face, or iris recognition to authenticate a user, thereby granting access to the secure element-protected password, and applying the seed value and algorithm to the public key, nonce, signature, and/or key pair to verify that it matches the one transmitted by the server).

38.     Each Accused Product comprises a computer program product tangibly embodied in an information carrier, the computer program product including instructions that, when executed, performs allowing access to the data if the verification performed by step c. is true, and denying access to the data if the verification performed by step c. is false. For example, if the sign in on the client machine is successful, access to data maintained on Regions server(s) is authorized

by Regions. If the client machine is not signed in, access to data maintained on Regions server(s) is denied by Regions.

39.     Regions indirectly infringes one or more claims of the '262 Patent by knowingly and intentionally inducing others, including Regions customers and end-users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Regions Web and Mobile Applications.

40.     Regions indirectly infringes one or more claims of the '262 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Regions's customers and end-users, in this District and elsewhere in the United States. For example, Regions's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '262 Patent. Regions induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Regions's inducement, Regions's customers and end-users use Accused Products in a way Regions intends and directly infringe the '262 Patent. Regions performs these affirmative acts with knowledge of the '262 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '262 Patent.

41.     Regions indirectly infringes one or more claims of the '262 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-

users, in this District and elsewhere in the United States. Regions's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '262 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '262 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Regions to be especially made or adapted for use in the infringement of the '262 Patent. Regions performs these affirmative acts with knowledge of the '262 Patent and with intent, or willful blindness, that they cause the direct infringement of the '262 Patent.

42.    Regions's infringement of the '262 Patent is willful, at least because it has knowingly and deliberately infringed the '262 Patent.

43.    BrowserKey has suffered damages as a result of Defendant's direct and indirect infringement of the '262 Patent in an amount to be proved at trial.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, BrowserKey prays for relief against Regions as follows:

a.    Entry of judgment declaring that Regions has directly and/or indirectly infringed one or more claims of the '262 Patent;

b.    Entry of judgment declaring that Regions's infringement of the '262 Patent is willful;

c.    An order awarding damages sufficient to compensate BrowserKey for Defendant's infringement of the '262 Patent, but in no event less than a reasonable royalty, together with pre-

judgment and post-judgment interest and costs;

      d.      Entry of judgment declaring that this case is exceptional and awarding BrowserKey its costs and reasonable attorneys' fees under 35 U.S.C. § 285;

      e.      An accounting for acts of infringement;

      f.      Such other equitable relief which may be requested and to which the Plaintiff is entitled; and

      g.      Such other and further relief as the Court deems just and proper.


Dated: April 30, 2025                    Respectfully submitted,

                                    */s/ Vincent J. Rubino, III*
                                    Alfred R. Fabricant
                                    NY Bar No. 2219392
                                    Email: ffabricant@fabricantllp.com
                                    Peter Lambrianakos
                                    NY Bar No. 2894392
                                    Email: plambrianakos@fabricantllp.com
                                    Vincent J. Rubino, III
                                    NY Bar No. 4557435
                                    Email: vrubino@fabricantllp.com
                                    Jacob Ostling
                                    NY Bar No. 5684824
                                    Email: jostling@fabricantllp.com
                                    **FABRICANT LLP**
                                    411 Theodore Fremd Avenue
                                    Suite 206 South
                                    Rye, New York 10580
                                    Telephone: (212) 257-5797
                                    Facsimile: (212) 257-5796

                                    **ATTORNEYS FOR PLAINTIFF**
                                    **BROWSERKEY LLC**